PHILLIP ZORN BREWING COMPANY *v.* MALOTT.

[No. 17,818.   Filed October 28, 1898.]

CONTRACTS.—*Mutual Mistake.— Reformation.— Adjoining Landowners.—Boundaries.*—Equity cannot reform a contract entered into by adjoining landowners agreeing upon a boundary line which both believed to be the true line, and in which both were mistaken, as such mistake involved the fundamental purpose for which the contract was entered into.

From the LaPorte Circuit Court.  *Reversed.*

*James F. Gallaher,* for appellant.

*H. B. Tuthill, A. V. Brown* and *J. G. Williams,* for appellee.

HACKNEY, C. J.—This was a suit by the appellee against the appellant and others, whose interests are not here involved, for the reformation of a written contract in which the parties agreed upon one of the boundary lines dividing lands of the appellee from the tract of the appellant in the city of Michigan City.

The cause was tried upon several paragraphs of complaint, and resulted in a special finding of facts and conclusions of law in support of the third paragraph of complaint as amended.  While the sufficiency of the several paragraphs of complaint is attacked by the appellant, there is no disagreement upon the proposition that, under the practice, the question raised upon the conclusions of law render it unnecessary to consider any question upon the sufficiency of the complaint.  *Woodward* v. *Mitchell,* 140 Ind. 406; *Scanlin* v. *Stewart,* 138 Ind. 574; *Stephenson* v. *Boody,* 139 Ind. 60; *Robinson* v. *Dickey,* 143 Ind. 205; *Tewksbury* v. *Howard,* 138 Ind. 103.  The contract in question, which was set out in the findings, was, in its essential features, "that for the purpose of establishing the division line between certain real estate owned by the parties" it was agreed, "each with the other, that the line" described "shall be, and the same is hereby, established and confirmed as the division line supporting and dividing the real estate owned by Malott on the northerly side of said division line from the real estate owned by the other parties hereto lying on the southerly side of said division line."  Said line is then particularly described by courses, distances, and monuments, and is made more particular by ref-

erence to a plat accompanying the contract, and to be recorded with it, "for the purpose of describing and establishing said division line." This contract and map were acknowledged by the parties, and recorded in the Miscellaneous Record of LaPorte county. That part of the line described in the contract and now in dispute is that which begins at a point 550 feet southeast from the southeast corner of Division and Michigan streets, on the north side of the latter street, and extends in a northeasterly course 168 feet.

The first twenty-two of the courts findings of fact relate to the source of the title, and descriptions of the lands owned by the several parties. It is further found that neither the appellant nor the appellee knew the location of the true dividing line between their respective tracts; that the true line was 103 feet southeast of the line designated in said contract, that is to say that the line described in the contract gave the appellant a strip of ground west of the true line 103 feet wide, and took that much from the appellee; that in the year 1887 Phillip Zorn, appellant's grantor, purchased the land east of the true line and procured a survey to be made to ascertain the line dividing them from the lands of the appellee, which survey erroneously located the division line on the line described in the contract, and said Zorn thereupon built a fence upon said line, which fence existed at the time of the contract. Of said survey and the erection of said fence Malott had no knowledge until just before the execution of said contract, in August, 1894; that the appellant and the appellee "each and both honestly intended and believed that the line so run and embodied in said contract was the true dividing line dividing their properties," and "each and all were mistaken in the location of the line stated in said

contract as dividing" their land; that appellee is the owner of the land lying west of said true line; that in the summer of 1894 by the filling of a creek at the north of the lands of appellant and appellee, all traces of a dividing line were obliterated. It is found also that the, appellee demanded reformation of the contract before this suit, which was instituted October 13, 1894. In repetition of facts once found, as we have stated them, the court stated that no doubt existed that the line described in the contract was not the true line, and that while there was conflict in the evidence as to the location of the true line, a preponderance of the evidence showed it to be as already indicated. There are also findings as to certain improvements made by the appellant, but, since no importance is attached to such findings in the argument, they are omitted. The court concluded as a question of law upon the facts found that said contract should be reformed so as to embrace a description of said true line as found to exist instead of the line therein described. The case made by the findings does not include an agreement between the parties, which agreement was not properly expressed in the writing. There is no finding of fraud or misrepresentation. The most that can be said for the facts is that both parties believed the fence to be on the true line, and that the true line was described in the writing. In this belief the parties were honestly and mutually mistaken.

It is not found as a fact that the parties intended or agreed arbitrarily to recognize, establish, and perpetuate the fence line as the true line. All that we learn of such possible intention is from the words of the writing, from which we are not to infer a fact, and at most could rest a conclusion of law, a conclusion as to its legal effect. The writing, therefore,

was made upon a mutual mistake that the line described was the true line. What is the rule in such cases? Equity cannot reform as there is no agreement to reform by. The mistake involves a fundamental error, an error as to the existence of the thing concerning which the writing was entered into. Of such mistakes it is said in Prof. Pollock's admirable treatise on the Principles of Contract (6th ed.), p. 442: "Next, it may happen that there does exist a common intention, which, however, is founded on an assumption made by both parties as to some matter of fact essential to the agreement. In this case the common intention must stand or fall with the assumption on which it is founded. If that assumption is wrong, the intention of the parties is from the outset incapable of taking effect. But for their common error it would never have been formed, and it is treated as non-existent. Here there is in some sense an agreement; but it is nullified in its inception by the nullity of the thing agreed upon. And it seems hardly too artificial to say that there is no real agreement. The result is the same as if the parties had made an agreement expressly conditional on the existence at the time of the supposed state of facts; which state of facts not existing, the agreement destroys itself. * * * In the latter class of cases the error must be common to both parties. They do agree to the same thing, and it would be in the same sense, but that the sense they intend, though possible as far as can be seen from the terms of the agreement, is in fact nugatory. As it is, their consent is idle; the sense in which they agree is, if one may so speak, insensible." The basis of the contract, the existence or identity of the thing contracted about, resting in mutual mistake, equity would be feeble if it afforded no relief. What is the relief?

As we have intimated, it cannot be reformation, since there was no agreement. The minds of the parties did not meet because of the mutual mistake as to the subject of the agreement. An attempted reformation must result only in making an agreement for the parties, in ascertaining and stating the agreement which they would have made had they not mistaken the subject of the agreement. Equity cannot decide what the parties would have done if they had understood correctly the location of the true line. In granting reformation, therefore, the circuit court erred. It is urged, however, that upon the prayer for reformation the court may grant rescission, or that the reformation, granted, but leaves the parties where they would stand without an agreement.

We would not diminish the powers of the chancellor to administer full and exact justice in disregard of mere fruitless technicalities, where the parties submit their grievances to a court of equity; but, since the evidence was in marked conflict as to the location of the true line, the court feeling called upon to state that his finding was upon a mere preponderance of the evidence, we feel that the ends of justice will be the better subserved by permitting a new trial upon more comprehensive pleadings. The decree of the circuit court is reversed, with instructions to grant a new trial, and for further proceedings in accordance with this opinion.